## VIRGINIA FALLON ET AL. *v.* THE MATWORKS ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-CV-03-0185487S

Memorandum filed January 2, 2007

*Jacobs, Jacobs & Shannon, PC*, for the named plaintiff et al.

*Pomeranz, Drayton & Stabnick*, for the intervening plaintiff Rite Aid Corporation.

*McNamara & Kenney*, for the named defendant, third party plaintiff.

*Russo & Larose*, for the third party defendant Thomas J. Anthoine Company, Inc.

*Kernan & Henry, LLP*, for the third party defendant Griswold Rubber Company, Inc.

*Goldstein & Peck, PC*, for the third party defendant Ludlow Composites Corporation.

*Law Offices of Jack V. Genovese*, for the third party defendant Tennessee Adhesives Company.

*Milano & Wanat*, for the third party defendant Vallis Carpet, Inc.

CREMINS, J. The present case arises out of a fall in a Rite Aid Pharmacy on July 26, 2001, in East Haven. The named plaintiff, Virginia Fallon, an employee of the pharmacy, claims that she slipped and fell on a defective carpet tile. A product liability action has been commenced by Fallon and her spouse, coplaintiff George Miller, against the named defendant and alleged seller of the tile, The Matworks (Matworks). Thereafter, Fallon's employer, Rite Aid Corporation (Rite Aid) intervened pursuant to General Statutes § 31-293a to recover workers' compensation benefits paid to Fallon. (Fallon, Miller and Rite Aid will subsequently be referred to collectively as the plaintiffs.) Matworks filed a third party complaint against various companies that allegedly supplied components of the product. Matworks alleged that Heckmonwike of Wellington Mills (Heckmonwike), an English company, supplied the carpet, Tennessee Adhesives Company (Tennessee) or Volunteer Adhesives Company (Volunteer) supplied the adhesive and Griswold Rubber Company, Inc. (Griswold), or Thomas J. Anthoine Company, Inc. (Anthoine), supplied the rubber backing. Ludlow Composites Corporation (Ludlow) was also named as a third party defendant on the ground that Ludlow assembled the tile for Matworks. The finished product was then installed on the floor of the pharmacy by a company that applies adhesive to the floor. It is alleged that Vallis Carpet, Inc. (Vallis), installed the carpeting in the Rite Aid Pharmacy in question.

After Matworks impleaded the various alleged component and service providers (Heckmonwike—carpet, Tennessee/Volunteer—adhesive, Griswold/Anthoine—rubber backing, Ludlow—assembler, and Vallis—installer) as third party defendants, the plaintiffs filed a direct action against them. The operative complaint

is dated July 12, 2004. The third party complaint is dated February 5, 2004. Heckmonwike, Volunteer and Anthoine are no longer in the lawsuit due to jurisdictional dismissals or withdrawals.

The product, which allegedly caused Fallon's injury, is referred to as a Pharmacy Preference Area EZE Tile (EZE carpet tile). This EZE carpet tile is not available because after the incident, the entire floor covering was taken up and discarded. Prior thereto, however, Fallon herself appeared on the premises and evidently obtained another carpet tile (or portion of a carpet tile) from the floor in question, although not the one that she allegedly tripped on. That carpet tile has been available for inspection and was marked as an exhibit at Fallon's deposition. The product consists of carpet with a rubber backing joined together by an adhesive. The product is assembled by obtaining rolls of carpet and rubber backing, joining them together with the adhesive and then cutting the tile into eighteen inch by eighteen inch squares.

Fallon claims that the carpet tile was defective and that it delaminated in the space between the carpet and the rubber backing. Alternatively, she claims that the carpet tile was not properly attached to the underlying floor.

A scheduling order was entered on this matter on August 4, 2004. Under the scheduling order, the plaintiffs' experts were to be disclosed by September 30, 2005. The defendants' experts were to be disclosed by March 10, 2006. Neither the plaintiffs nor any of the defendants (either named or third party) have disclosed any liability experts.

Currently before the court are the five following motions for summary judgment. First, Griswold's motion for summary judgment as to the plaintiffs and

Matworks. Matworks has objected, and the plaintiffs have filed no objection. Second, Tennessee's motion for summary judgment as to the plaintiffs and Matworks. Matworks has objected, and the plaintiffs have filed no objection. Third, Vallis' motion for summary judgment as to the plaintiffs and Matworks. Matworks has objected, and the plaintiffs have filed no objection. Fourth, Ludlow's motion for summary judgment as to the plaintiffs. The plaintiffs have objected. Fifth, and finally, Matworks' motion for summary judgment as to the plaintiffs, to which the plaintiffs have objected.

Matworks, the named defendant, and the remaining third party defendants can be separated into three groups: (1) sellers and manufacturers-assemblers—Matworks and Ludlow; (2) installer—Vallis; and (3) component suppliers—Griswold and Tennessee.

Summary judgment is sought by the defendants on the ground that liability cannot be proven without expert testimony and that neither the plaintiffs nor the named defendant has such an expert. Additionally, summary judgment is sought on the basis that neither the rubber backing to the EZE carpet tile nor the adhesive used to bind the rubber backing to the carpet can even be shown to have been manufactured and sold by Griswold and Tennessee, respectively.

I

APPLICABLE LAW

Summary judgment shall be rendered "if the pleadings, affidavits and any other proof submitted show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable

principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) *Zielinski* v. *Kotsoris*, 279 Conn. 312, 318, 901 A.2d 1207 (2006). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 757, 905 A.2d 623 (2006). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotation marks omitted.) *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 663, 691 A.2d 1107 (1997). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 757. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Brown* v. *Soh*, 280 Conn. 494, 501, 909 A.2d 43 (2006). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188, 819 A.2d 765 (2003). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." *Nolan* v. *Borkowski*, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "A conclusory assertion [in an affidavit] does not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment." *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000).

"In ruling on a motion for summary judgment, the court must decide whether there is a genuine issue of material fact. If there are issues of fact, the court may

not resolve them without giving the parties a full hearing." *Gould* v. *Mellick & Sexton*, 66 Conn. App. 542, 556, 785 A.2d 265 (2001), rev'd on other grounds, 263 Conn. 140, 819 A.2d 216 (2003), citing *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 307, 407 A.2d 971 (1978); *McColl* v. *Pataky*, 160 Conn. 457, 459, 280 A.2d 146 (1971). "[S]ummary judgment is appropriate only if a fair and reasonable person could conclude only one way." (Internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 815, 830 A.2d 752 (2003). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence *viewed in the light most favorable to the nonmovant*, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original; internal quotation marks omitted.) Id.

## II

## DISCUSSION

The court will first address the summary judgment motions directed at the plaintiffs, to which they have not objected. "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 450, 627 A.2d 1329 (1993). "When a motion for summary judgment is filed and supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by [§§ 17-45 and 17-46 of the Practice Book], must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment

shall be entered against him." *Farrell* v. *Farrell*, 182 Conn. 34, 38, 438 A.2d 415 (1980).

Here, the plaintiffs have filed no response to the summary judgment motions filed by Griswold, Vallis and Tennessee. "A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties *and that the moving party is entitled to judgment as a matter of law.*" (Emphasis added; internal quotation marks omitted.) *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 568, 512 A.2d 893 (1986). Therefore, the following motions for summary judgment are granted: Griswold's as to the plaintiffs; Vallis' as to the plaintiffs; Tennessee's as to the plaintiffs.

With regard to the other parties, "[i]t is now well established under Connecticut law that a plaintiff may, under proper circumstances, prove the existence of a product defect without the benefit of expert testimony." *Debartolo* v. *Daimler Chrysler Corp.*, Superior Court, judicial district of New Haven, Complex Litigation Docket, Docket No. X10-CV-03-0482725S (December 22, 2005) (40 Conn. L. Rptr. 503, 505) (*Munro, J.*) (finding that airbag failing to deploy in moderate impact accident was evidence of defect that could go to jury without expert). "Connecticut courts . . . have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony. See, e.g., *Standard Structural Steel Co.* v. *Bethlehem Steel Corp.*, 597 F. Sup. 164, 183 (D. Conn. 1984) (recognizing Connecticut law permits fact finder to draw inference of defect from circumstantial evidence); *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, 3 Conn. App. 661, 664, 491 A.2d 433 (1985) ('It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition. In the absence of other identifiable

causes, evidence of malfunction is sufficient evidence of a defect under § 402A of the Second Restatement of Torts.'); *Kileen* v. *General Motors Corp.*, 36 Conn. Sup. 347, 349, 421 A.2d 874 (1980) ('[t]he fact finder can find, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect') . . . ." *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 218, 694 A.2d 1319 (1997).

Section third of the Restatement (Third) of Torts, Products Liability, is entitled "Circumstantial Evidence Supporting Inference of Product Defect" and provides that "[i]t may be inferred that the harm . . . was caused by a product defect . . . without proof of a specific defect, when the incident . . . (a) was of a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." Restatement (Third), Torts, Products Liability § 3, p. 111 (1998). Comment (b) to this Restatement section elaborates that "[s]ection 3 claims are limited to situations in which a product fails to perform its *manifestly intended function*, thus supporting the conclusion that a defect of some kind is the most probable explanation." (Emphasis added.) Id., comment (b), p. 112. Comment (c) explains further that there is "[n]o requirement that [the] plaintiff prove what aspect of the product was defective. The inference of defect may be drawn under this Section without proof of the specific defect. Furthermore, quite apart from the question of what type of defect was involved, the plaintiff need not explain specifically what constituent part of the product failed." Id., comment (c), p. 114. Some courts refer to the rule in this section as the "malfunction doctrine." In this particular case, a fact finder could find that the carpet tiles in question failed to perform their manifestly intended function, namely, providing a smooth surface for walking.

The malfunction doctrine relied upon by the plaintiffs can be summarized as follows: "In modern products liability litigation . . . a plaintiff normally must prove that a product was defective, that the product contained the defect when it left the defendant's control, and that the defect proximately caused the plaintiff's harm. A plaintiff who fails to establish each of these elements by a preponderance of the evidence fails to make a prima facie case. If a manufacturing defect causes a product accident, usually the plaintiff can prove the defect and its causal relation to both the manufacturer and the accident largely by direct evidence—as by testimony from an expert that the product contained an identifiable production flaw, deviating from design specifications, that caused the product to fail in a particular manner. Sometimes, however, a product may malfunction under circumstances suggesting a manufacturing defect . . . but without leaving any direct physical evidence as to how or why, specifically, the product failed to operate properly. In such cases, the absence of direct evidence of product defectiveness and causation hampers a plaintiff's efforts to establish a prima facie products liability case.

"In negligence law, if the specific cause of a product malfunction is unknown, the doctrine of res ipsa loquitur allows a jury to infer the manufacturer's negligence when the circumstances of the accident suggest that the product was negligently manufactured or designed. However, because the res ipsa doctrine is designed to establish a defendant's *negligence* rather than a product's *defectiveness*, most courts consider the res ipsa doctrine technically inapplicable to strict liability in tort or breach of warranty, both of which are unconcerned with a defendant's conduct. Although not entirely necessary, the courts, in an effort to maintain a fundamental distinction between negligence and strict liability, began at an early date to tailor principles similar to

those that underlie res ipsa loquitur into a separate doctrine for proving claims in strict products liability. Dubbed the 'malfunction theory,' these special principles of circumstantial evidence now provide a widely accepted means for proving defectiveness in cases where direct evidence of defectiveness is unavailable.

"Under the malfunction doctrine, a plaintiff may establish a prima facie case of product defect by proving that the product failed in normal use under circumstances suggesting a product defect. Put otherwise, a product defect may be inferred by circumstantial evidence that (1) the product malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction. The malfunction doctrine may be described less formally as providing that a plaintiff need not establish that a specific defect caused an accident if circumstantial evidence permits an inference that the product, in one way or another, probably was defective.

"Since normal products liability doctrine requires a plaintiff to establish that a product was defective and that the defect caused his harm, requiring a plaintiff to prove that a specific defect caused the accident might appear to make good sense. But the very purpose of the malfunction doctrine is to allow a plaintiff to prove a case by circumstantial evidence when there simply is no direct evidence of precisely how or why the product failed. Sometimes the specific cause of a malfunction disappears in the accident when the product blows up, burns up, is otherwise severely damaged, or is thereafter lost. Not infrequently, however, products simply malfunction, and mysteriously so, leaving no tangible trace of how or why they failed. In all such situations, where direct evidence is unavailable, the courts have properly refused to require the plaintiff to prove what specific defect caused the product to malfunction.

"Because the malfunction doctrine is merely a principle of circumstantial evidence rather than a formal definition of what constitutes a manufacturing defect, the doctrine is logically compatible with a definition of manufacturing defect in terms of a departure from the manufacturer's design specifications." (Emphasis in original.) D. Owen, "Manufacturing Defects," 53 S.C. L. Rev. 851, 871–74 (2002).

"While courts have applied the malfunction doctrine in many cases to help plaintiffs get to the jury when evidence of a specific defect is unavailable, plaintiffs have lost many other cases in which they have relied unreasonably upon this type of circumstantial proof. The doctrine presents a seductive but faulty shelter for plaintiffs with insufficient proof of defect and causation, and the law reports brim with decisions that recite the propriety of the doctrine as a general proposition but hold it inapplicable to the facts. The opinions in such cases frequently note that, while the malfunction doctrine provides a method for plaintiffs in proper cases to establish defectiveness and causation, the law will not allow plaintiffs or juries to rely on guess, conjecture, or speculation.

"Although the malfunction doctrine may come to a plaintiff's rescue when circumstances fairly suggest the responsibility of a product defect, it is hornbook law that proof of a product accident alone proves neither defectiveness nor causation. Nor does further proof that the accident was caused by a malfunction suffice to prove these elements. The crucial additional showing required of a plaintiff in a malfunction case is the negation of causes for the malfunction other than a product defect." Id., 878.

## A

### Griswold Rubber

The plaintiffs in their fourth amended complaint and the third party plaintiff in its third party complaint all

allege that Griswold provided the "rubber backing" used to make the EZE carpet tile. Griswold has filed a motion for summary judgment as to the plaintiffs, the intervening plaintiff and the third party plaintiff, Matworks, in which it asserts two grounds for summary judgment. One ground is that there is no proof that their component was the rubber backing used in the carpet tile at issue in the present case, and the other basis is that, if in fact it is their rubber backing, there is no expert proffered by either the plaintiffs or the third party plaintiff that indicates any defect in the rubber backing component of the product. The plaintiffs and the intervening plaintiff have not filed objections to the motion for summary judgment.

Three of the employees of Griswold, who have been deposed or offered affidavits in connection with the present case, have indicated that the rubber backing on the carpet tile in question (partial tile removed from Rite Aid store no. 3264 by the plaintiff Virginia Fallon) could be Kushon Sponge 3110 ordered from Griswold by Matworks on April 3 and April 12, 2000 with the last shipment date of May 5, 2000. All three: David Natorski, director of sales and marketing, Brian Reynolds, research and development manager, and Daniel Mahoney, record keeper and designated representative, believe other suppliers were also providing rubber backing to Matworks. Mahoney named Expanded Rubber as a producer of an identical product. No documents provided to the court indicate invoices or evidence exists pointing to the purchase by Matworks of rubber backing, in the relevant time frame, from anyone other than Griswold. At this point it remains a question of fact as to whether the rubber backing in question was in fact a Griswold component. Summary judgment is denied as to that ground.

The other ground for summary judgment asserted by Griswold is that, if in fact the rubber backing is

Griswold's, a liability expert is required to show that the rubber backing was the defective component which led to the product itself being defective and ultimately causing the injuries the plaintiffs allege. As to that ground, the court agrees with Griswold. No expert has been disclosed with regard to any defect in the rubber backing. Matworks does not address the distinction between the carpet tile as opposed to the rubber backing "failing in its manifestly intended purpose," in their objection to Griswold's motion for summary judgment.

Following the reasoning of the court in *Debartolo*, a reasonable fact finder could infer from their own lay experience that the EZE carpet tile was defective, because the delamination that occurred was a malfunction of the product, absent any expert testimony as to the specific defect, the same fact finder would not be able to find a defect in the component rubber backing. Just as in *Debartolo*, where a finding as to the specific reason the airbag failed to deploy (and perhaps implicating a specific component of the airbag or related mechanisms) would have required an expert witness with knowledge beyond that of a lay person, in the present case a finding that a specific component or a specific part of the manufacturing process was defective would require an expert witness with knowledge beyond that of a lay person.

The Restatement of Torts supports this reasoning. Section 5 of the Restatement (Third) of Torts, Products Liability, addresses the harm caused by products into which components are integrated. Liability can be found for producers of components if: "(a) the component is defective in itself . . . or (b) (1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and (2) the integration of the component causes the product to be defective . . . and (3) the

defect in the product causes the harm." Restatement (Third), supra, § 5, p. 130.

There is no evidence that Griswold participated in the integration of their component into the design of this product. (Apparently they did participate in integrating the rubber into later versions of the carpet tile.) In order to find the rubber backing component itself was defective, the fact finder would need expert testimony because what actually caused the carpet tile to delaminate is beyond the knowledge of the average lay person.

The motion for summary judgment is granted in favor of Griswold as to the plaintiffs and third party plaintiff Matworks.

## B

### Tennessee Adhesives

Like Griswold, Tennessee is alleged to be the producer of a component used to make the EZE carpet tile. Fallon and Miller in their fourth amended complaint and Matworks in its third party complaint allege that Tennessee provided the "adhesive" used in fabricating the carpet tile. Tennessee has filed a motion for summary judgment as to Fallon, Miller, Rite Aid and the third party plaintiff, Matworks, in which it asserts two grounds for summary judgment. One ground is that there is no proof that their component was the adhesive used in the carpet tile at issue in the present case, and the other basis is that, if in fact it is their adhesive, there is no expert proffered by either Fallon and Miller or Matworks indicating any defect in the adhesive component of the product. Neither Fallon and Miller nor Rite Aid have filed objections to the motion for summary judgment.

Randall Dobbs, an employee of Ludlow, the company that fabricated the EZE carpet tile, testified at his deposition that Ludlow purchased adhesive from two suppliers in the time frame when the EZE carpet tile, which

ultimately was shipped on May 31, 2000, to the East Haven Rite Aid Pharmacy, was made. They purchased adhesive from Tennessee on April 27 and from Volunteer on March 27 and May 1, 2000. Because of the overlap in purchases, no one at Ludlow can say which company, Tennessee or Volunteer, supplied the adhesive used in the EZE carpet tile in question in the present case. At this point it remains a question of fact as to whether the adhesive in question was in fact a Tennessee component. Summary judgment is, therefore, denied as to that ground.

The other ground for summary judgment asserted by Tennessee is that, if in fact the adhesive is Tennessee's, a liability expert is required to show that the adhesive was the defective component which led to the product itself being defective and ultimately causing the injuries the plaintiffs allege. As to that ground, the court agrees with Tennessee. No expert has been disclosed with regard to any defect in the adhesive. Matworks does not address the distinction between the *EZE carpet tile* as opposed to the *adhesive* "failing in its manifestly intended purpose" in their objection to Tennessee's motion for summary judgment. As with Griswold, there is no evidence that Tennessee participated in the integration of their component into the design of this product. Following the same analysis used earlier as to the Griswold component, in order to find the adhesive component itself was defective, the fact finder would need expert testimony because what actually caused the carpet tile to delaminate is beyond the knowledge of the average lay person.

The motion for summary judgment is granted in favor of Tennessee as to the plaintiffs and the third party plaintiff Matworks.

## C

## Vallis Carpet, Inc.

Vallis admits that it installed the original EZE carpet tile at the Rite Aid Pharmacy where Fallon fell on July 26, 2001. This original installation occurred on or about June, 2000. Vallis performed no further work at the premises. Matworks does not dispute that in or about January, 2001, and May, 2001 it hired National Entry Installation (not a party to the present action) to repair and replace carpet tiles at the Rite Aid Pharmacy in question. The repairs were based on a delamination of certain carpet tiles in various areas of the store, including the area where Fallon fell on July 26, 2001. Fallon has testified that she does not know if the carpet tile she is alleged to have tripped over was one of the carpet tiles that has been replaced or repaired. Vallis asserts two grounds in its motion. First, it argues that the installation of the carpet tiles requires special skills and knowledge beyond that of an ordinary person and the claims are, therefore, tantamount to a claim of professional negligence or malpractice and cannot stand absent expert testimony. Matworks argues in opposition that a product defect, under appropriate circumstances, can be proven without the benefit of expert testimony by applying the malfunction doctrine. The court agrees with Matworks.

Matworks, in that its action directed at Vallis sounds in professional negligence-malpractice, is required to put forth expert testimony to establish the applicable standard of care a carpet installer owes and expert testimony showing how the defendant allegedly violated that standard. "[P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all circumstances in the community by the average prudent reputable member of the profession with the result of injury,

loss or damage to the recipient of those services." (Emphasis in original; internal quotation marks omitted.) *Vona* v. *Lerner*, 72 Conn. App. 179, 187, 804 A.2d 1018 (2002), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003).

The plaintiff in a professional negligence or malpractice action must demonstrate: (1) the relevant standard of care in the circumstances; and (2) that the defendant deviated from the standard of care and that the deviation caused harm to the plaintiff. *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 334, 430 A.2d 1 (1980).

In the present case, the plaintiffs' negligence claim is "akin to [an allegation] of professional negligence or malpractice, which we have previously defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Internal quotation marks omitted.) *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). "[I]f the determination of [this] standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required." (Internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 699–700, 748 A.2d 834 (2000).

There is no expert testimony to support Matworks' claim against Vallis. Therefore, the motion for summary judgment is granted in favor of Vallis as to the plaintiffs and third party plaintiff Matworks.

## D

## Ludlow Composites Corporation

Ludlow admits that it assembled the EZE carpet tile for Matworks and shipped the tile to the Rite Aid Pharmacy for installation. Ludlow argues that because the

plaintiffs cannot produce the specific defective carpet tile that is alleged to have caused the fall, there is no evidence to establish that a specific defective carpet tile caused the fall and, therefore, the plaintiffs' claims directed to Ludlow must fail. The plaintiffs admit that the specific EZE carpet tile that Fallon is alleged to have tripped over is unavailable. The plaintiffs argue that the unavailability of the specific EZE carpet tile in issue does not entitle Ludlow to summary judgment. The court agrees with the plaintiffs.

Judge Corradino addressed the issue as follows: "[T]he case now before the court can be said to fall into one or another of two evidentiary categories which are analytically related, often factually related and have similar consequences as to proof problems. Both are strict liability torts, are generally referred to as malfunction cases, and do not depend on a negligence theory. One type of case is noted in [W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 99, p. 696] ([the] second category) and the leading case *Henningsen* v. *Bloomfield Motors, Inc.*, [32 N.J. 358, 161 A.2d 69 (1960)]. In that type of case as Prosser [and Keeton note] a user of the product testifies 'that a component part malfunctions, but for some reason, either because the accident destroys the evidence or the product disappears, there is no evidence as to an identifiable flaw that could have caused the accident,' [W. Prosser & W. Keeton, supra, p. 696.] In *Henningsen*, the court permitted the inference to be drawn of some kind of flaw in the steering mechanism of the car. [*Henningsen* v. *Bloomfield Motors, Inc.*, supra, 409–10]. In such cases, since the product is no longer available for inspection and the inference based on circumstantial evidence is permitted without predicate of expert testimony but is just based on the nature of the accident, it seems to go without saying that expert testimony need not be produced by the plaintiff to make out a prima facie case. The *Henningsen* court seemed

to underline this when it [stated]: 'It may be conceded that the opinion of the automobile expert produced by the plaintiffs in the present case was not entitled to very much probative force.' " [Id., 411.] *O'Connor* v. *General Motors Corp.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-89-028104 (April 25, 1997) (21 Conn. L. Rptr. 151, 151–52) (*Corradino, J.*).

Thus, Ludlow's summary judgment motion as to the plaintiffs is denied.

## E

## The Matworks

Matworks' summary judgment motion argues that Matworks is not liable because it did not install the EZE carpet tiles which Fallon claims caused her injuries. The plaintiffs respond that the present case relates to the product (EZE carpet tile) and not the installation of the product. Putting aside Matworks' antipodal position in this summary judgment motion directed to the plaintiffs versus its position in response to the summary judgment motions directed at it from other third party defendants, the court agrees with the plaintiffs.

The present action is one sounding in strict product liability. The Connecticut Supreme Court has outlined the essential elements of a strict product liability claim as follows: "(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in the condition." *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 234, 429 A.2d 486 (1980).

The plaintiffs' allegation against Matworks is that the product itself, not the installation of the product, was

defective and caused Fallon's injuries. Thus, Matworks' motion for summary judgment as to the plaintiffs is denied.

## III

## CONCLUSION

In summary, the court's conclusions are as follows. First, Griswold's motion for summary judgment is granted as to the plaintiffs, Fallon, Miller and Rite Aid and as to the third party plaintiff Matworks. Second, Tennessee's motion for summary judgment is granted as to the plaintiffs, Fallon, Miller and Rite Aid and as to the third party plaintiff Matworks. Third, Vallis' motion for summary judgment is granted as to the plaintiffs, Fallon, Miller and Rite Aid, and as to the third party plaintiff Matworks. Fourth, Ludlow's motion for summary judgment as to the plaintiffs, Fallon, Miller and Rite Aid is denied. Fifth, and finally, Matworks' motion for summary judgment as to the plaintiffs, Fallon, Miller and Rite Aid is denied