ROLAND TODD WHITE *v.* MAZDA MOTOR OF
AMERICA, INC., ET AL.
(AC 33757)

DiPentima, C. J., and Bear and West, Js.

Argued April 17—officially released November 6, 2012

*Frank J. McCoy, Jr.*, with whom, on the brief, was *Alexander J. Sarris*, for the appellant (plaintiff).

*Paul D. Williams*, with whom was *James E. Hennessey*, for the appellees (defendants).

*Opinion*

BEAR, J. The plaintiff, Roland Todd White, appeals from the summary judgment rendered by the trial court in favor of the defendants, Mazda Motor of America, Inc. (Mazda), and Cartwright Auto, LLC (dealership), in this product liability action stemming from a fire in his 2007 Mazda3 automobile (vehicle), which allegedly caused injury to the plaintiff. On appeal, the plaintiff claims that the court erred in concluding that his case should not proceed to a trial on the merits because he had failed to present sufficient evidence in opposition to the defendants' motion for summary judgment. We affirm the judgment of the trial court.

The record reveals the following. The plaintiff filed a two count amended complaint against the defendants seeking damages under the Connecticut Product Liability Act (act), General Statutes § 52-572m[1] et seq., alleging that the vehicle was "defective and unreasonably

---

[1] General Statutes § 52-572m (b) provides: " 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent."

dangerous." The plaintiff alleged in his complaint that on October 16, 2006, he purchased the vehicle from the dealership.[2] The plaintiff utilized the vehicle "for the purpose for which it had been designed, produced, manufactured, tested and sold; and [it] was used in a manner intended and foreseeable to [the defendants]." On November 15, 2006, approximately one month after the plaintiff had purchased the vehicle, he "lifted up the hood of the [vehicle] and flames erupted from [it], causing the [p]laintiff to sustain [injuries]."

On the basis of these alleged facts, the plaintiff claimed that the vehicle was defective and unreasonably dangerous in the following ways: (1) the fuel lines on the fuel rail of the vehicle were pressed onto the fitting at the fuel rail in such a way that a fuel leak occurred and caused a fire; (2) the fuel lines were installed or secured with clamps improperly, which caused damage to the lines, resulting in a fuel leak and a fire; (3) the defendants negligently installed the fuel lines on the vehicle in an incorrect manner, causing a fuel leak and a fire; (4) the defendants negligently failed to design the vehicle and its component parts so that it would not be a hazard to a consumer purchaser; (5) the defendants negligently failed to test or inspect the vehicle and its component parts; (6) the defendants manufactured or sold the vehicle with defective component parts or a defective engine, thereby causing a hazard to users of the vehicle; (7) the defendants failed to warn the plaintiff of the aforesaid conditions; (8) the defendants breached their statutory warranty of merchantablility in that the vehicle was not fit for the ordinary purpose for which it was sold; and (9) the

---

[2] Although the parties do not contest that the vehicle was new when purchased by the plaintiff, his complaint also alleges that the vehicle had 2800 miles on its odometer at the time of purchase. This allegation, however, is denied by the defendants in their answer. Also, for purposes of the motion for summary judgment, the defendants did not dispute that the plaintiff had driven approximately 2800 miles in the vehicle commuting to and from work.

defendants sold the vehicle in a defective, unsafe and dangerous condition, thereby subjecting the plaintiff to an unreasonable risk of injury.

On December 1, 2010, the defendants filed a motion for summary judgment on the ground that the plaintiff, "among other things, [had] adduced no evidence, expert or otherwise, to establish that [1] the vehicle at issue was defectively designed or manufactured, or [2] that the alleged defect [in the vehicle] caused [the plaintiff's] injuries." In their supporting memorandum, the defendants argued that the plaintiff "failed to elicit any evidence in discovery that the [v]ehicle was defective in that it was unreasonably dangerous, that any alleged defect caused [the plaintiff's] injury, that any alleged defect existed at the time of sale, or that the [v]ehicle reached [the] [p]laintiff without substantial change in condition." They also argued that the plaintiff failed to set forth any evidence regarding a failure to warn. Attached to the defendants' motion and supporting memorandum were multiple documents, including portions of the plaintiff's deposition testimony, portions of the deposition testimony of the plaintiff's expert, Richard E. Morris, a certified fire investigator, and copies of two reports written by Morris. The defendants conceded, for purposes of the motion for summary judgment only, the truth of the following deposition testimony of the plaintiff: On or about October 16, 2006, the plaintiff purchased the vehicle from the dealership. The plaintiff utilized the vehicle for his commute to and from his place of employment, which was approximately sixty miles each way, and he made the trip approximately forty times in the vehicle before the incident on November 15, 2006. The plaintiff put approximately 2800 miles on the vehicle traveling to and from work.[3] Prior to the fire, the plaintiff had no problems

---

[3] We recognize that if the plaintiff drove to and from work forty times and the drive was sixty miles each way, the total miles driven would equal 4800. Based on the undisputed mileage at the time of the fire, it is likely

with the vehicle and never made any complaints about it. Before the fire, the plaintiff was satisfied with the operation of the vehicle.

The defendants also attached portions of Morris' deposition at which he testified that he was "not offering an opinion that the [vehicle] was defective . . . ." He also agreed that he was not an expert in automobile electronics, design or manufacture, and that he was not an expert in fuel line component manufacture or design. Morris also testified that his research did not reveal any history of similar fires in other Mazda3s. The defendants also attached two reports written by Morris in which he opined, after examining another Mazda3, referred to by him as an exemplar vehicle, that the "fire [in the plaintiff's vehicle] was most likely caused by a fuel leak in the fuel rail system." Morris further opined that "either the clip was improperly installed on the gas line which allowed it to loosen or that a gasket was improperly installed allowing gasoline to seep through and drop onto the engine manifold." He further stated: "[T]his fire is still a result of the gas lines, the plastic and rubber fittings and gas lines associated with the fuel rail of this vehicle and . . . the fire appears to be from the cause of a mechanical failure and . . . is the direct result of gasoline leaking on a hot surface causing the vehicle to catch fire."

On January 3, 2011, the plaintiff filed an objection to the defendants' motion for summary judgment on the basis that the plaintiff had "provided sufficient evidence that the vehicle . . . harbored a defective design and/or improper installation of automotive parts that ultimately caused a car fire and, subsequently, the [p]laintiff's injuries. Therefore, the [p]laintiff has set forth a prima facie case for his claim under the [act]." He

that the plaintiff made approximately twenty round-trips. Any possible discrepancy, however, is not relevant for purposes of our analysis.

argued in his supporting memorandum that the court should deny the defendants' motion because he did submit, by means of Morris' testimony, reports and affidavit, sufficient evidence that the vehicle was defectively designed or manufactured. Specifically, the plaintiff cited Morris' testimony that "Morris came to the conclusion that the plastic release tab clips on the gas line and fuel lines and/or gaskets were defective in that they were flimsy, did not function correctly and ultimately failed, thereby serving as the most likely cause of the car fire." The plaintiff also cited Morris' testimony that he was "pretty amazed that the clip to the fuel line was flimsy and, by a simple touch, sprung off the fuel line."[4]

Additionally, the plaintiff provided Morris' affidavit in which Morris attested that he is familiar with external and internal components of automobiles, that he is a private fire investigator who regularly inspects automobiles in an effort to identify the origin and cause of fires, that he conducted an origin and cause of fire investigation on the plaintiff's vehicle, that it was his professional opinion that "the release tab clip on the gas line and/or gasket did not function correctly and failed, thereby being the most likely cause of the [vehicle's] fire [and that] [t]his situation would allow gasoline to escape and seep through then drop onto the engine manifold." He further averred that the cause of the vehicle's fire "was a mechanical failure related to the plastic and rubber fillings and/or gas lines associated with the fuel rail of [the] vehicle. . . . As a result of [this] mechanical failure, gasoline proceeded to leak onto a hot surface, thereby causing the vehicle to catch fire." The plaintiff argued that Morris' expert testimony, reports and affidavit, all of which were attached as

---

[4] We note that, in his report, Morris stated that this opinion was based on his examination of an exemplar vehicle rather than the plaintiff's vehicle because of the damage the plaintiff's vehicle had sustained in the fire.

exhibits to the plaintiff's objection and supporting memorandum in opposition to the defendants' motion for summary judgment,[5] provided sufficient evidence to establish a prima facie claim under the act.[6] He further argued that, even if Morris did not qualify as an expert for all aspects of this case, "there still exists a genuine issue of material fact as to whether the defective condition of the vehicle was the proximate cause of the [p]laintiff's harm."

On February 16, 2011, the defendants filed a reply brief in further support of their motion for summary judgment. In their reply, the defendants asserted that Morris, the plaintiff's "sole expert witness . . . has not—and cannot—provide an opinion concerning whether the vehicle's fuel system was defectively designed or manufactured." The defendants specifically cited to Morris' deposition testimony where he stated that he was not offering an opinion that the vehicle was defective and that he was not an expert in "[1] automobile mechanics, [2] automobile electronics, [3] the design or manufacture of any automobile components related to fuel lines . . . [4] the design of automobiles . . . or [5] the manufacture of automobiles . . . ." (Internal quotation marks omitted.) They also argued that the plaintiff's alternate argument concerning proximate cause was a "red herring" in that the plaintiff *first* must demonstrate a defect causing an unreasonably dangerous condition before proving proximate cause and that he failed to provide any competent expert testimony regarding a defect in the vehicle.

On June 22, 2011, the court granted the defendants' motion for summary judgment. In its memorandum of

---

[5] The record reveals that these were the only documents submitted by the plaintiff in opposition to the motion for summary judgment.

[6] The plaintiff acknowledged that he was "required to provide some form of evidence, including expert testimony, to quantify the precise product defect." The evidence from Morris, however, was directed to causation of harm rather than to establishing "the precise product defect."

decision, the court stated: "Connecticut's general rule requires competent expert evidence where the issues involve a question beyond the field of ordinary knowledge and experiences of judges and jurors. In particular, in cases involving automobiles, expert testimony is particularly essential due to the highly technical, complex and specialized questions raised by such claims." The court subsequently found that because Morris, a certified fire investigator, did not offer an opinion that the vehicle was defectively designed or manufactured, the plaintiff "failed to proffer sufficient expert testimony as required pursuant to [the act]."[7] Additionally, the court determined that without such expert testimony, a jury would be unable to determine the proximate cause of the plaintiff's harm. On July 7, 2011, the plaintiff filed a motion to reargue, and, on July 28, 2011, the court denied that motion.[8] This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court erred in granting the defendants' motion for summary judgment on the ground that the plaintiff failed to provide sufficient evidence that the vehicle was defective and unreasonably dangerous. The plaintiff argues that "the trial court granted the defendants' . . . motion for summary judgment requiring the plaintiff . . . to produce expert testimony to prove that [his vehicle] was defective when the gas line mechanism exploded under normal use. The plaintiff . . . contends that sufficient evidence that the [vehicle] was defective at the time of its sale was submitted by both expert opinion and by way of the 'malfunction doctrine.' "[9] We disagree.

---

[7] We need not determine for purposes of this appeal whether Morris was qualified to give an expert opinion on the defectiveness of the vehicle. It is clear that he stated he was not offering such an opinion in this case.

[8] The plaintiff has not appealed from the court's denial of his motion to reargue.

[9] The defendants argue that the plaintiff failed to raise the applicability of the malfunction theory before the trial court and that, therefore, we should not consider it on appeal. In this appeal, the plaintiff for the first time, argues that his evidence meets the "factors" for establishing a product

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

liability claim pursuant to the malfunction theory of product liability, as articulated by our Supreme Court in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, 302 Conn. 123, 133–35, 25 A.3d 571 (2011). As set forth in this opinion, however, the plaintiff in this case did not make that claim in opposition to the defendants' motion for summary judgment but instead based his opposition to the defendants' motion on the theory that he had "provided sufficient evidence that the vehicle at issue harbored a defective design and/or improper installation of automotive parts that ultimately caused a car fire and, subsequently, the [p]laintiff's injuries." In his opposition, the plaintiff relied on the investigation, analysis and reports by his expert, Morris, as to causation of harm rather than alleging the absence of any direct evidence. In the absence of any perceived need to do so, he did not mention or rely on the malfunction theory in opposing the defendants' motion for summary judgment. Therefore, the court had no occasion to consider it prior to rendering summary judgment.

Because we conclude that the plaintiff did not raise the malfunction theory in the trial court prior to its rendering summary judgment, we decline to consider its application on appeal. See generally *Billboards Divinity, LLC* v. *Commissioner of Transportation*, 133 Conn. App. 405, 409–11, 35 A.3d 395 (declining to consider argument on appeal that was not raised before trial court in opposing motion for summary judgment), cert. denied, 304 Conn. 916, 40 A.3d 783 (2012); *Hodgate* v. *Ferraro*, 123 Conn. App. 443, 452, 3 A.3d 92 (2010) (plaintiff cannot ambush trial court by arguing on appeal theory not raised in opposition to motion for summary judgment); cf. *Murphy* v. *EAPWJP, LLC*, 306 Conn. 391, 399, 50 A.3d 316 (2012) ("[i]t is well established that a claim must be distinctly raised at trial to be preserved for appeal"); *Tompkins* v. *Freedom of Information Commission*, 136 Conn. App. 496, 511, 46 A.3d 291 (2012) ("It is fundamental that claims of error must be distinctly raised and decided in the trial court before they are reviewed on appeal. As a result, Connecticut appellate courts 'will not address issues not decided by the trial court.' "); *Przekopski* v. *Zoning Board of Appeals*, 131 Conn. App. 178, 189, 26 A.3d 657 ("It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." [Emphasis in original; internal quotation marks omitted.]), cert. denied, 302 Conn. 946, 30 A.3d 1 (2011).

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Nipmuc Properties, LLC* v. *Meriden*, 130 Conn. App. 806, 811–12, 25 A.3d 714, cert. denied, 302 Conn. 939, 28 A.3d 989 (2011), cert. denied, U.S. , 132 S. Ct. 1718, 182 L. Ed. 2d 253 (2012). "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Montanaro* v. *Balcom*, 132 Conn. App. 520, 524–25, 35 A.3d 280 (2011).

The plaintiff argues that "[c]ontrary to allegations made by the [defendants] in their [appellate brief], the [plaintiff] presented various forms of evidence and testimony, both expert and otherwise, to establish a product defect claim that the subject vehicle at issue was defectively designed and/or manufactured pursuant to the [act]." We conclude that the court properly rendered summary judgment in this case.

"[I]n order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." (Internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 214, 694 A.2d 1319 (1997). "A product may be defective due to a flaw in

the manufacturing process, a design defect or because of inadequate warnings or instructions. . . . Under § 402A of the Restatement (Second) of Torts, a manufacturer is strictly liable for injuries suffered if the product was sold in a defective condition unreasonably dangerous to the user . . . ." (Citations omitted; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.,* 257 Conn. 365, 373–74, 778 A.2d 829 (2001). "For a product to be unreasonably dangerous, it must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (Internal quotation marks omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.,* 302 Conn. 123, 131, 25 A.3d 571 (2011).

Although it is true that an ordinary consumer may, under certain circumstances, be able to form expectations as to the safety of a product; *Potter* v. *Chicago Pneumatic Tool Co.,* supra, 241 Conn. 218; we nonetheless consistently have held that "expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." (Internal quotation marks omitted.) *Keeney* v. *Mystic Valley Hunt Club, Inc.,* 93 Conn. App. 368, 375, 889 A.2d 829 (2006); see also *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.,* supra, 302 Conn. 141 ("[i]f lay witnesses and common experience are not sufficient to remove [a] case from the realm of speculation, the plaintiff will need to present expert testimony to establish a prima facie case").

In granting the defendants' motion for summary judgment in this case, the court determined that the issues involved complex questions outside of the ordinary knowledge and experience of jurors and that Morris' opinion on the origin of the fire was insufficient to establish the existence of a design or manufacturing defect in the vehicle. The court noted that Morris "only

offered an opinion as to how the fire in the vehicle may have started. He did not offer an opinion that the vehicle was defectively designed or manufactured, and he specifically testified that he is not an expert in automobile mechanics, automobile electronics, the design or manufacture of any automobile components related to fuel line designs of automobiles or the manufacture of automobiles."

We conclude that, considering the evidence presented in the record in a light most favorable to the plaintiff, the court did not err in granting the defendants' motion for summary judgment. The plaintiff presented Morris' opinion to the court, identifying the most likely causes of the engine compartment fire. Morris, who examined an exemplar vehicle's fuel system for potential flaws, however, offered no opinion as to whether the plaintiff's vehicle was defective, testifying at his deposition that he is not an expert in fuel line component manufacture or design, automobile mechanics, automobile electronics or the manufacture or design of automobiles and that he was not opining that the vehicle, in fact, was defective. Although Morris' opinion on the origin of the fire was based, at least in part, on his examination of another Mazda3, which led him to state that he was "pretty amazed that the clip to the fuel line was flimsy and, by a simple touch, sprung off the fuel line" and to conclude that "the plastic release tab clips on the gas line and fuel lines and/or gaskets were defective in that they were flimsy, did not function correctly and ultimately failed, thereby serving as the most likely cause of the car fire," the plaintiff failed to present any expert to opine on the defectiveness of the design or manufacture of the vehicle or of the Mazda3 model.

On the basis of the record before us, we conclude that, in addition to Morris' expert opinion on causation, the plaintiff was required to provide the opinion of

another expert that established sufficient prima facie evidence of the contested product liability issues in the case, e.g., that the vehicle was in a defective condition unreasonably dangerous to the consumer or user, that the defect or defects caused the injury for which compensation was sought, that the defect or defects existed at the time of the sale and that the vehicle after its manufacture was expected to and did reach the consumer without any substantial change in its condition. The plaintiff neither disclosed such an expert nor offered any expert opinion on those product liability issues. Accordingly, we conclude that the court's decision granting the defendants' motion for summary judgment and rendering judgment thereon was appropriate in this case.

The judgment is affirmed.

In this opinion DiPENTIMA, C. J., concurred.

WEST, J., dissenting. I respectfully disagree with the majority's determination that the plaintiff, Roland Todd White, did not raise the "malfunction theory" before the trial court and, therefore, would reach the merits of this claim. On appeal, the plaintiff argues that there is sufficient circumstantial evidence to establish a prima facie case against the defendants, Mazda Motor of America, Inc., and Cartwright Auto, LLC, under the malfunction theory, a product liability doctrine that applies where direct evidence of a specific defect is unavailable and permits a jury to infer that the vehicle was defective through circumstantial evidence, with or without expert testimony. See *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, 302 Conn. 123, 133, 25 A.3d 571 (2011). The court concluded that the plaintiff could not establish a prima facie case under the Connecticut Product Liability Act (act), General Statutes § 52-572m et seq., absent expert testimony concerning

a product defect. Implicit in the court's holding is that the plaintiff must identify a specific design or manufacture defect, and must do so with expert testimony. Because I believe that the plaintiff may establish a prima facie case through circumstantial evidence under the malfunction theory and need not present expert testimony regarding the allegedly defective condition of the vehicle, I would reverse the judgment of the trial court granting the defendants' motion for summary judgment. Accordingly, I respectfully dissent.

I

At the outset, the majority declined to consider the application of the malfunction theory on the ground that the plaintiff did not raise this claim before the trial court. In particular, the majority concluded that the plaintiff based his opposition to the defendants' motion for summary judgment on the theory that he had "provided sufficient evidence that the vehicle at issue harbored a defective design and/or improper installation of automotive parts that ultimately caused a car fire and, subsequently, the [p]laintiff's injuries." In doing so, the majority cites the long-standing authority that "an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis in original; internal quotation marks omitted.) *Przekopski* v. *Zoning Board of Appeals*, 131 Conn. App. 178, 189, 26 A.3d 657, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011).

Although the plaintiff did not refer to the malfunction theory by name, he did raise before the trial court the argument that his case could be proven through circumstantial evidence. In his memorandum in opposition to the defendants' motion for summary judgment, the plaintiff argued, in the alternative, that if his expert, Richard E. Morris, did not qualify as an expert witness, the proximate cause of the plaintiff's harm could still be proven through circumstantial evidence. As part of this argument, the plaintiff cited *Lewis* v. *North American Philips Corp.*, Superior Court, judicial district of New Haven, Docket No. CV-91-0315792-S (April 6, 1994), where the court denied the defendant's motion for summary judgment after determining that there was a genuine issue of material fact as to whether the plaintiff's television set was defective and whether such a defect was the proximate cause of the plaintiff's harm on the basis of the plaintiff's own eyewitness testimony that the television self-ignited. Interestingly, the defendants addressed this argument in their reply brief in further support of their motion for summary judgment by first labeling it as a red herring, but subsequently contending that the "[p]laintiff's argument ignores black letter law by suggesting that a jury should be allowed to speculate, without . . . expert testimony to guide them, as to the alleged defect with the [v]ehicle."[1]

In its memorandum of decision, the court did not expressly address the plaintiff's argument that the proximate cause of his harm could be proven through circumstantial evidence. Rather, the court concluded that "[w]ithout . . . expert testimony, a jury would be unable to determine whether the allegedly defective condition of the vehicle was the proximate cause of the plaintiff's harm." The plaintiff filed a motion to

---

[1] The defendants further argued that *Lewis* v. *North American Philips Corp.*, supra, Superior Court, Docket No. CV-91-0315792-S, was distinguishable.

reargue, in which he claimed that the court misapplied the case law when it determined that expert testimony was required to establish a product defect. The plaintiff then cited additional Connecticut cases where courts permitted a jury to infer a product defect from circumstantial evidence without expert testimony. The court denied the plaintiff's motion to reargue. Because I believe that the trial court was fairly apprised of the full nature of the plaintiff's alternative claim, which fundamentally concerned the application of the malfunction theory for purposes of establishing a prima facie case under the act, I would reach the merits of this claim.

II

Review of whether the plaintiff may establish a prima facie case under the act by way of circumstantial evidence of a product defect is plenary.[2] Our Supreme Court recently has adopted the malfunction theory in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 123. "To recover under the doctrine of strict liability in tort, a plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. . . . For a product to be unreasonably dangerous, it must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. . . .

---

[2] See *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 605, 821 A.2d 774 ("whether the plaintiff has established a prima facie case is a question of law, over which our review is plenary" [internal quotation marks omitted]), cert. denied, 264 Conn. 919, 828 A.2d 617 (2003).

"Although most product liability cases are based on direct evidence of a specific product defect, there are cases in which such evidence is unavailable. For example, a product malfunction may result in an explosion, a crash or a fire that damages or destroys much, if not all, of the product's components. See, e.g., *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, 35 Conn. Sup. 687, 689, 406 A.2d 1254 (components of television set destroyed in fire), cert. denied, 177 Conn. 754, 399 A.2d 526 (1979). The product also may be lost when it has been discarded or destroyed after the incident such that the parties are no longer able to examine it. See, e.g., *Fallon* v. *Matworks*, 50 Conn. Sup. 207, 210, 918 A.2d 1067 (2007) (product discarded after accident but before it could be examined by experts). In such cases, the plaintiff is unable to produce direct evidence of a defect because of the loss of essential components of the product.

"The absence of direct evidence of a specific product defect is not, however, fatal to a plaintiff's claims, and a plaintiff, under certain circumstances, may establish a prima facie case using circumstantial evidence of a defect attributable to the manufacturer. . . . In addition, a plaintiff need not present evidence to establish a specific defect, [as] long as there is evidence of some unspecified dangerous condition." (Citations omitted; internal quotation marks omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 131–33.[3]

---

[3] In *Metropolitan Property & Casualty Ins. Co.*, our Supreme Court indicated that it had not yet "examined the precise contours of those circumstances in which this principle might apply" but recognized that this court and decisions of the Superior Court "have used the 'malfunction theory' of products liability to permit a jury to infer the existence of a product defect that existed at the time of sale or distribution on the basis of circumstantial evidence alone." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 133.

"The malfunction theory of products liability permits the plaintiff to establish a prima facie product liability case on the basis of circumstantial evidence when direct evidence of a defect is unavailable. Most states have adopted some form of the malfunction theory. . . . Although this theory does not relieve a plaintiff of the burden to prove all elements of a product liability claim . . . it does help to establish a prima facie product liability case by permitting the jury to infer the existence of a defect attributable to the manufacturer. According to § 3 of the Restatement (Third) of Torts, Products Liability, in a product liability action, the malfunction theory permits a jury to infer that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff . . . was of a kind that ordinarily occurs as a result of product defect . . . and . . . was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution. . . . This theory is based on the same principles underlying the doctrine of res ipsa loquitur, which permits a fact finder to infer negligence from the circumstances of the incident, without resort to direct evidence of a specific wrongful act. . . . Indeed, when a relatively new product fails to perform its intended function, the fact that the product failed may be said to speak for itself and provide support for an inference that the product was defective." (Citations omitted; internal quotation marks omitted.) Id., 133–35.

After setting forth the background principles, the court in *Metropolitan Property & Casualty Ins. Co.* summarized the adoption of the malfunction theory in Connecticut: "[W]hen direct evidence of a specific defect is unavailable, a jury may rely on circumstantial evidence to infer that a product that malfunctioned was defective at the time it left the manufacturer's or seller's

control if the plaintiff presents evidence establishing that (1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller. These two inferences, taken together, permit a trier of fact to link the plaintiff's injury to a product defect attributable to the manufacturer or seller. A plaintiff may establish these elements through the use of various forms of circumstantial evidence, including evidence of (1) the history and use of the particular product, (2) the manner in which the product malfunctioned, (3) similar malfunctions in similar products that may negate the possibility of other causes, (4) the age of the product in relation to its life expectancy, and (5) the most likely causes of the malfunction." Id., 139–41.[4]

Additionally, the court in *Metropolitan Property & Casualty Ins. Co.* laid out the evidentiary burden that a plaintiff must establish: "[N]ot only must there be sufficient evidence to support each required inference, but the evidence also must be sufficient for the trier of fact to conclude, after considering all of the evidence presented and all reasonable inferences to be drawn therefrom, that the manufacturer is more likely than not responsible for the plaintiff's harm. [63 Am. Jur. 2d

---

[4] The court in *Metropolitan Property & Casualty Ins. Co.* also stated that the plaintiff in a malfunction theory case must, as a threshold matter, "present sufficient evidence to support a finding that the product, and not some other cause apart from the product, was more likely than not the cause of the plaintiff's injury." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 140 n.9. In the present case, based on the nature of the alleged malfunction, there is sufficient evidence for a jury to determine that the product itself caused the plaintiff's injuries, not some other independent cause.

96, Products Liability § 54, (2010)] ('Although proof may be made by circumstances alone, the plaintiff is required to establish that the facts and circumstances, together with all appropriate inferences, give rise to the conclusion with reasonable certainty that the defect in a product [attributable to the manufacturer] proximately caused the plaintiff's injury. That is, the evidence must be sufficient to tilt the balance from possibility to probability.'). When the evidence is not sufficient to support such a finding, and such a finding essentially would require speculation by the trier of fact, the case cannot properly be submitted to the jury." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 149.

In *Metropolitan Property & Casualty Ins. Co.*, the court stated that "[w]hether a plaintiff in this state may use the malfunction theory when the product is still available for inspection but the plaintiff nevertheless is unable to produce direct evidence of a specific defect is a question that we need not resolve . . . ." Id., 132 n.4. Although the vehicle in the present case was physically available for inspection, most of the engine compartment and many critical components were destroyed by the fire. Morris' report illustrates the condition of the plaintiff's vehicle upon his inspection. Morris stated that the engine compartment was "badly consumed by fire . . . . [T]he engine manifold was completely burnt away . . . as well as the fuel rail and all associated parts that went along with that area were damage[d]. The hoses were all burned away as well as the injectors were very loose and just sitting on top of the engine. . . . [T]he top of the injectors, even in the engine housing, are melted away. . . . [T]he positive and negative battery cables were compromised . . . . [T]he area where the battery and fuse box would be housed was completely destroyed as well."

I believe that the fire that consumed the plaintiff's vehicle is the type of malfunction our Supreme Court described as "that [which] damages or destroys much, if not all, of the product's components." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 131–32. Because of the missing engine components in the engine compartment, Morris went to a Mazda dealership to examine a similar model for purposes of comparison. On the basis of the extensive damage to the part of the vehicle that allegedly malfunctioned, it would be especially difficult for the plaintiff to present direct evidence of a specific defect. Accordingly, I would consider whether the plaintiff has presented sufficient evidence for a jury to infer (1) whether the vehicle fire was the type of harm that ordinarily does not occur in the absence of a product defect and (2) whether the alleged defect most likely existed at the time the product left the defendants' control. See id., 139–40.

In *Metropolitan Property & Casualty Ins. Co.*, our Supreme Court noted that the first element of the malfunction theory is based on the doctrine of res ipsa loquitur, stating that "when a relatively new product fails to perform its intended function, the fact that the product failed may be said to speak for itself and provide support for an inference that the product was defective." (Internal quotation marks omitted.) Id., 135. The plaintiff testified in his deposition that he purchased the vehicle only a month before the fire and that he did not have any mechanical issues prior to the fire. Significantly, the vehicle had less than 3000 miles on its odometer. "The occurrence of an accident a short time after sale is circumstantial evidence of product malfunction." 2A American Law of Products Liability (3d Ed. 2008) § 31:25, p. 34. Jurors could use their common knowledge that new automobiles, in normal use, do not self-ignite to infer that such self-ignition would

not occur in the absence of a product defect. See *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, supra, 35 Conn. Sup. 691 (inference of defect in television set permitted when witness saw flames emanating from television set because "television sets, in normal use, do not self-ignite"). The inference of a malfunction can "also be established with circumstantial evidence of a malfunction, such as difficulties with the product at or near the time of the accident . . . ." *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 141–42. Here, immediately prior to the fire and explosion, the plaintiff smelled gasoline inside the cabin of the vehicle, prompting him to pull the vehicle over to the side of the highway. Again, jurors could infer that the strong odor of gasoline detected in the passenger compartment immediately preceding the engine fire would not occur absent a product defect. In *Metropolitan Property & Casualty Ins. Co.*, our Supreme Court lists five types of circumstantial evidence that can be used to establish the elements of the malfunction theory. Id., 141. In the present case, the evidence of the history and use, the manner of the alleged malfunction, and the age of the vehicle, all could be used by a jury to infer that the vehicle fire would not have occurred absent a defect. Therefore, I believe that there is a genuine issue of material fact as to whether the vehicle fire was of a kind that ordinarily occurs as a result of a product defect.

For the second element of the malfunction theory, the plaintiff must present evidence that any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller. The plaintiff must "negate other factors that might account for an alteration of the product after sale, including improper use, modification, tampering or improper maintenance . . . . A plaintiff

need not conclusively eliminate all possible causes of a product defect but must only negate reasonably possible secondary causes." (Citations omitted; internal quotation marks omitted.) Id., 143. In the present case, there are no apparent secondary causes for the fire that would require the plaintiff to present evidence to negate them, such as modification to the vehicle after it was purchased.[5] The plaintiff stated that after purchasing the vehicle he had not opened the hood until the time of the fire. The plaintiff testified that he drove the vehicle under normal conditions to commute to and from his place of employment. The vehicle had been purchased only a month prior to the fire and had only 2800 miles on the odometer. "When a product malfunctions when it is new, the inference that the malfunction resulted from a defect attributable to the manufacturer is likely to be stronger than when the product is older because of the diminished possibility of other causes in the case of the newer product." Id., 144. "[C]ase law generally supports limiting the [malfunction theory] to new or nearly new products, in the absence of additional evidence linking the product defect to the manufacturer." Id., 147 n.15. In the present case, there is circumstantial evidence that would allow a jury to infer that any defect most likely existed at the time the vehicle left the defendants' control. Therefore, I believe that there is a genuine issue of material fact as to whether the alleged defect existed at the time the vehicle left the defendants' control.

---

[5] When asked in his deposition by the defendants whether he could rule out arson as the cause of the vehicle fire, Morris replied in the negative. The defendants argue that because the plaintiff has not offered evidence to negate arson as the cause of the fire, he cannot satisfy the second element of the malfunction theory. Morris' answer to that question in the negative does not mean that arson is a reasonably possible secondary cause of the fire. At trial, if the evidence presented suggests that arson was such a cause, then the plaintiff has the burden of presenting sufficient evidence to negate it. See *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 142–43.

For the foregoing reasons, I believe that the plaintiff has established a prima facie case under the malfunction theory.[6] At trial, the court should be permitted to determine whether the evidence is sufficient to "support each inference by a preponderance of the evidence before submitting [the] case to the jury . . . ." Id., 148.

## III

I further believe that the plaintiff need not present expert testimony regarding the allegedly defective condition of the vehicle. Review of whether expert testimony is required is plenary.[7] Our Supreme Court has recognized that expert testimony is not required in all product liability actions. *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 217–18, 694 A.2d 1319 (1997). "Connecticut courts . . . have consistently stated that

[6] The defendants argue that the plaintiff must establish sufficient evidence of the five types of circumstantial evidence listed by the Supreme Court in *Metropolitan Property & Casualty Ins. Co.*, namely, the history and use of the vehicle, the manner in which the product malfunctioned, similar malfunctions in similar products, the age of the product in relation to its life expectancy and the most likely causes of the malfunction. See *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 140–41. In that case, the court explicitly states that "[a] plaintiff *may* establish these elements through the use of various forms of circumstantial evidence, *including* evidence of . . . [listing five types of circumstantial evidence]." (Emphasis added.) Id. It is clear therefore that a plaintiff is not required to present evidence of *each* type of circumstantial evidence, but merely enough evidence from *any combination* of the five types from which a jury could make both inferences under the malfunction theory.

[7] See *Ackerly & Brown, LLP* v. *Smithies*, 109 Conn. App. 584, 587–88, 952 A.2d 110 (2008) ("The determination of whether expert testimony is needed to support a claim of legal malpractice presents a question of law. . . . Accordingly, our review is plenary." [Citation omitted.]); *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 136–37, 907 A.2d 1220 (2006) ("we note that the court's determination of whether expert testimony was needed to support the plaintiff's claim of negligence . . . was a legal determination, and, thus, our review is plenary"); *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 92, 851 A.2d 1242 ("because the defendant's challenge to the trial court's refusal to direct a verdict raises a question of law about the necessity for expert testimony, our review is plenary"), cert. denied, 271 Conn. 918, 859 A.2d 570 (2004).

a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony." Id., 218. In *Metropolitan Property & Casualty Ins. Co.*, our Supreme Court stated that in malfunction theory cases, "[i]f lay witnesses and common experience are not sufficient to remove the case from the realm of speculation, the plaintiff will need to present expert testimony to establish a prima facie case." *Metropolitan Property & Casualty Ins. Co. v. Deere & Co.*, supra, 302 Conn. 141.

Our Supreme Court has also recognized that *"expert testimony . . . is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact. . . .* The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters. . . . We note that expert testimony has not been required to show: negligent boat operation . . . or detrimental effects of marijuana. . . . [S]ee also *Ciarlelli v. Romeo*, 46 Conn. App. 277, 283, 699 A.2d 217 (citing cases concluding expert testimony not required to prove: effect of operating gasoline station on traffic safety; injuries sustained on plaintiff's property were caused by defendant's blasting; negligence in failing to erect porch railing; fence erected around blasting area insufficient to prevent injuries; obscenity of certain materials for minors), cert. denied, 243 Conn. 929, 701 A.2d 657 (1997). Indeed, in *Marquardt & Roche/Meditz & Hackett, Inc. v. Riverbend Executive Center, Inc.*, 74 Conn. App. 412, 426, 812 A.2d 175 (2003), the Appellate Court concluded that expert testimony was not required to demonstrate the difficulty of backing a vehicle out of a parking space, noting instead that that question is one which our legislature expects all operators of motor vehicles to consider on a regular basis when using public streets." (Citations omitted; emphasis added; internal quotation marks

omitted.) *Allison* v. *Manetta*, 284 Conn. 389, 405–406, 933 A.2d 1197 (2007).

In support of the proposition that expert testimony was necessary in automobile defect cases like the present one, the trial court cited *Predom* v. *Hadfield*, Superior Court, judicial district of New Haven, Docket No. 419156 (January 26, 2001), in which the court granted the defendant's motion for summary judgment because the plaintiff failed to produce an expert witness about the "exceptionally complicated nature and regulatory requirements regarding air bags . . . ." Id. Other decisions of the Superior Court, however, have denied summary judgment after determining that, in the absence of expert testimony, the nature of some alleged defect is within the common knowledge and experience of ordinary consumers. See, e.g., *DeBartolo* v. *Daimler Chrysler Corp.*, Superior Court, judicial district of New Haven, Docket No. CV-03-0482725-S (December 22, 2005) (40 Conn. L. Rptr. 503) (holding that plaintiff was entitled to present defect claim to jury without expert testimony where air bag failed to deploy upon moderate frontal impact and seat belt shoulder harness failed to restrain plaintiff); *Vaccarelli* v. *Ford Motor Co.*, Superior Court, judicial district of Waterbury, Docket No. CV-99-0153308-S (July 6, 2001) (holding same where air bag deployed without impact).[8]

Although automobile engines are complex, I believe that the nature of the facts in the present case fall within the common knowledge and experience of ordinary consumers. A juror, using only his or her common knowledge and experience could infer that a new vehicle that self-ignited under normal driving conditions was the kind of incident that ordinarily occurs as a

---

[8] Although this authority is not binding, I agree that the nature of some alleged defects in automobile defect cases is within the common knowledge and experience of ordinary consumers.

result of a product defect attributable to the manufacturer or seller. To make such an inference, a juror need not understand the complexity of an automobile engine but can merely rely on his or her knowledge and experiences of the way motor vehicles operate. Because the malfunction theory alleviates the burden of the plaintiff to identify a specific malfunction, it is unnecessary for a juror to pinpoint exactly what mechanism or mechanisms within the engine caused the fire.

For the foregoing reasons, I would reverse the judgment of the trial court. Accordingly, I respectfully dissent.