******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROLAND TODD WHITE *v.* MAZDA MOTOR
OF AMERICA, INC., ET AL.
(SC 19088)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Vertefeuille, Js.

*Argued October 29, 2013—officially released September 23, 2014*

*Alexander J. Sarris*, with whom, on the brief, was *Frank J. McCoy, Jr.*, for the appellant (plaintiff).

*Paul D. Williams*, with whom, on the brief, was *John W. Cerreta*, for the appellees (named defendant et al.).

*Brenden P. Leydon* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Cristin E. Sheehan* and *Jonathan M. Hoffman*, pro hac vice, filed a brief for the Product Liability Advisory Council, Inc., as amicus curiae.

*Opinion*

ZARELLA, J. In this certified appeal, we consider whether the plaintiff, Roland Todd White, preserved for appellate review a claim under the malfunction theory of products liability. The malfunction theory allows a plaintiff in a product liability action to rely on circumstantial evidence to support an inference that an unspecified defect attributable to a product seller was the most likely cause of a product malfunction when other possible causes of the malfunction are absent. See generally *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, 302 Conn. 123, 131–33, 25 A.3d 571 (2011). In the present case, the plaintiff initiated a product liability action against the defendants, Mazda Motor of America, Inc. (Mazda), and Cartwright Auto, LLC,[1] after his Mazda3 sedan caught fire on the side of the highway approximately one month after the plaintiff purchased the vehicle and had driven it about 2800 miles. The trial court granted the defendants' motion for summary judgment after the plaintiff failed to produce competent expert testimony to support his claim that a specific defect in the vehicle's fuel system caused the fire and that the fire was the proximate cause of the plaintiff's injuries. On appeal to the Appellate Court, however, the plaintiff principally claimed that he could prove his case by claiming the existence of some unspecified product defect under the malfunction theory of products liability. See *White* v. *Mazda Motor of America, Inc.*, 139 Conn. App. 39, 46–47 n.9, 54 A.3d 643 (2012). The Appellate Court, with one judge dissenting, determined that the plaintiff had not raised the malfunction theory in the trial court and thus did not preserve it for appellate review. See id., 47 n.9; see also id., 51 (*West, J.*, dissenting). After concluding that the plaintiff did not support his specific defect claim with competent expert testimony, the Appellate Court affirmed the trial court's judgment. Id., 50–51.

The plaintiff filed a petition for certification to appeal, which we granted, limited to the following issues. First, "[d]id the Appellate Court properly conclude that the plaintiff had failed to raise the malfunction theory claim at trial?" *White* v. *Mazda Motor of America, Inc.*, 307 Conn. 949, 60 A.3d 741 (2013). Second, "[i]f the answer to the first question is in the negative, did the plaintiff present a prima facie case under the 'malfunction theory' of products liability?" Id., 950. Because we agree with the Appellate Court that the plaintiff did not preserve his malfunction theory claim for appellate review, we answer the first certified question in the affirmative and do not reach the merits of the plaintiff's claim under the second certified question. Accordingly, we affirm the judgment of the Appellate Court.

I

In the predawn hours of a mid-November morning

in 2006, the plaintiff, who worked a night shift, left work after his shift ended and began his sixty mile commute home, driving alone on Interstate 395 in his Mazda3 sedan. The plaintiff had purchased the vehicle, new, approximately one month earlier and had made the trip between his home and work about forty times, for a total of about 2800 miles. The ride home that morning was uneventful, at least for the first forty-five miles. At that point, the plaintiff smelled gasoline and pulled over to the shoulder of the highway to investigate. Other than the gasoline smell, the plaintiff did not observe anything unusual about the vehicle's condition, gauges, lighting, or switches, and did not feel any heat or see any smoke. After pulling over, the plaintiff opened the hood to look at the engine, and saw a "flash" and "slight explosion" that caused him to fall backward. The plaintiff was not burned, but he did injure his left knee during his fall and was later treated. The engine caught fire, and the local fire department responded and extinguished it. Prior to the fire, the plaintiff had no problems with the vehicle, did not complain about it to anyone, and was satisfied with its operation.

The plaintiff later brought this action against the defendants to recover for the injuries to his left knee.[2] The plaintiff alleged that a defect within the vehicle's fuel system caused a fire or explosion in the engine that, in turn, caused the plaintiff to suffer "from pain and injuries to his left knee and left leg, all of which were caused by the accident or were the result of an aggravation of a preexisting condition."

The plaintiff alleged a number of reasons why the vehicle was defective, which the Appellate Court summarized as follows: "(1) the fuel lines on the fuel rail of the vehicle were pressed onto the fitting at the fuel rail in such a way that a fuel leak occurred and caused a fire; (2) the fuel lines were installed or secured with clamps improperly, which caused damage to the lines, resulting in a fuel leak and a fire; (3) [Mazda] negligently installed the fuel lines on the vehicle in an incorrect manner, causing a fuel leak and a fire; (4) [Mazda] negligently failed to design the vehicle and its component parts so that it would not be a hazard to a consumer purchaser; (5) the defendants negligently failed to test or inspect the vehicle and its component parts; (6) the defendants manufactured or sold the vehicle with defective component parts or a defective engine, thereby causing a hazard to users of the vehicle; (7) the defendants failed to warn the plaintiff of the aforesaid conditions; (8) the defendants breached their statutory warranty of merchantability in that the vehicle was not fit for the ordinary purpose for which it was sold; and (9) the defendants sold the vehicle in a defective, unsafe and dangerous condition, thereby subjecting the plaintiff to an unreasonable risk of injury." *White* v. *Mazda Motor of America, Inc.*, supra, 139 Conn. App. 41–42.

During discovery, the plainitff disclosed a proposed expert witness, Richard E. Morris, who would testify that the incident involving the plaintiff's vehicle was caused by a specific malfunction in the vehicle's fuel system. According to the disclosure, Morris, a fire investigator, would "testify that he conducted an origin and cause fire investigation of the plaintiff's vehicle" and that he "may opine that the plastic clips and/or gasket that held the supply lines into the fuel rail were inadequately designed, constructed and/or installed." According to the plaintiff's disclosure, Morris "further concluded that the plastic clips easily disengaged to allow the fuel line to slip off and allow free gasoline to leak into the engine."

The defendants later deposed Morris, who concluded that a poorly designed fuel clip or gasket in or on the vehicle fuel line failed and caused the fire. The trial court observed, however, that Morris had testified that he was "not an expert in automobile mechanics, automobile electronics, the design or manufacture of any automobile components related to fuel lines, [or] the design . . . or the manufacture of automobiles." In addition, and significantly, Morris declined to offer an opinion about whether the plaintiff's vehicle was defective.

On the basis of the allegations in the pleadings and the facts disclosed during discovery, the defendants filed a motion for summary judgment. In their motion, the defendants made two distinct arguments about the adequacy of the plaintiff's evidence with respect to two of the elements of a product liability claim.[3] First, the defendants argued that the plaintiff did not produce evidence that his vehicle had a defect because the plaintiff's proposed expert, a fire investigator, was not qualified to render an opinion about automobile defects and, in any event, declined to offer an opinion about whether the vehicle was defective. According to the defendants, the plaintiff's claims involved an alleged defect in a complex automobile engine, and, thus, the plaintiff was required to present expert testimony to establish a prima facie case. Second, the defendants argued that the plaintiff did not produce competent evidence to establish that the alleged defect in his vehicle proximately caused his injuries, which, according to the plaintiff's own pleadings, might have been related to a preexisting condition.

The plaintiff responded to these arguments in his memorandum in opposition to the defendants' summary judgment motion. As to the first argument, the plaintiff acknowledged that he was required to present expert testimony to prove the existence of a defect but asserted that he had sufficient expert testimony to demonstrate that a specific defect in the vehicle's fuel line caused the fire. The plaintiff alleged, in essence, that a fire investigator inspected both the plaintiff's vehicle and

an exemplar, and concluded that "plastic release tab clips on the gas line and fuel lines and/or gaskets" were "flimsy" and "ultimately failed," likely causing the fire. The plaintiff attached three exhibits to support his arguments: (1) an affidavit from Morris; (2) a portion of Morris' deposition testimony; and (3) reports prepared by Morris in connection with his inspection of the plaintiff's vehicle and the exemplar. Each of the exhibits served to reinforce Morris' conclusions about the existence of a specific defect. As to the defendants' second argument, the plaintiff argued that he did not need expert testimony to prove the proximate cause element of a product liability claim because there was sufficient circumstantial evidence, namely, his own eyewitness testimony, to support his claim that the alleged defect in the vehicle caused his injuries.

The trial court granted the defendants' summary judgment motion. In its memorandum of decision, the trial court concluded that the plaintiff's claim of defect, which involved an allegedly defective complex automobile engine, required the plaintiff to present expert testimony. Although the plaintiff proposed Morris as an expert, the trial court determined that Morris lacked the required, relevant expert credentials "[b]ecause . . . Morris expressly disavow[ed] any expertise in any area outside of origin and cause fire investigations and [did] not offer an opinion that the vehicle in question was defectively designed or manufactured . . . ." With respect to the issue of proximate cause, the trial court concluded that, "[w]ithout this expert testimony, a jury would be unable to determine whether the allegedly defective condition of the vehicle was the proximate cause of the plaintiff's harm." As a result, the trial court determined that the plaintiff did not present competent evidence to create a genuine issue of material fact and therefore granted the defendants' motion for summary judgment and rendered judgment thereon for the defendants.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. On appeal, the plaintiff principally argued that he could prove his product liability claims based on an unspecified defect under the malfunction theory and without expert testimony. *White* v. *Mazda Motor of America, Inc.*, supra, 139 Conn. App. 46–47 n.9. The defendants objected to the plaintiff's reliance on the malfunction theory on the ground that the plaintiff did not raise this theory in the trial court. Id., 46 n.9. The defendants further argued that the trial court properly granted their motion for summary judgment because the plaintiff had failed to proffer expert evidence to support his claims, which involved a complex product. See id., 48–49.

The Appellate Court affirmed the trial court's judgment, with one judge dissenting. Id., 51; see also id. (*West, J.*, dissenting). A majority of the Appellate Court

panel concluded, like the trial court, that the plaintiff's specific defect claims required expert testimony because of the complex nature of the product at issue and that the plaintiff failed to produce this evidence. See id., 49–51. In reaching its conclusion, the Appellate Court majority declined to address the plaintiff's claim that he alternatively could prove the existence of an unspecified defect under the malfunction theory. Id., 46–47 n.9. The Appellate Court majority determined that the plaintiff failed to raise this theory of liability in the trial court and, therefore, did not preserve it for appellate review. Id., 47 n.9. The dissenting judge conculed that the plaintiff sufficiently raised the malfunction theory in the trial court, albeit indirectly, and proceeded to address the merits of that claim. Id., 53–54 (*West, J.*, dissenting). The dissenting judge further concluded that the plaintiff had established a prima facie case under the malfunction theory and that he did not need expert testimony to prove this claim under the facts of the case. Id., 63 (*West, J.*, dissenting). This certified appeal followed.

## II

The plaintiff claims that the Appellate Court incorrectly concluded that he failed to raise a claim based on the malfunction theory in the trial court. Specifically, the plaintiff asserts that he provided sufficient notice of a claim under the malfunction theory in his memorandum in opposition to the defendants' motion for summary judgment, at oral argument on the motion, and in his motion for reargument. In response, the defendants assert that the plaintiff relied exclusively on the specific defect theory in his pleadings and his memorandum in opposition to the motion for summary judgment and, therefore, did not raise a claim of an unspecified defect under the malfunction theory. We agree with the defendants.

## A

Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that "[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008). "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court."[4] (Citations omitted; internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5. "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; inter-

nal quotation marks omitted.) *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004); see, e.g., *McKiernan* v. *Caldor, Inc.*, 183 Conn. 164, 166, 438 A.2d 865 (1981) (issue "briefly suggested" in trial court is not distinctly raised). The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties. See, e.g., *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004). "These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Johnson*, 289 Conn. 437, 461, 958 A.2d 713 (2008).

To properly raise a theory of liability in the trial court, a party must articulate it in advance, as an "early warning," so that an opposing party may "frame its presentation of evidence" accordingly. *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 766, 717 A.2d 150 (1998). "The requirement that claims be raised timely and distinctly also recognizes that counsel should not have the opportunity to surprise an opponent by interjecting a claim when opposing counsel is no longer in a position to present evidence against such a claim." *Swerdloff* v. *AEG Design/Build, Inc.*, 209 Conn. 185, 189, 550 A.2d 306 (1988). Parties will naturally base their discovery strategy and litigation decisions on the claims raised by opposing parties. It would be patently unfair for a plaintiff to plead his claims under one theory of liability, only to shift to a new, alternative theory on appeal, well after the close of discovery, thus preventing or hindering the defendant from gathering facts relating to the plaintiff's new claims. See, e.g., id.; cf. *Council* v. *Commissioner of Correction*, supra, 286 Conn. 498.

B

To put the defendants on notice that the plaintiff intended to pursue an alternative theory of liability under the malfunction theory, the plaintiff needed to plead this theory in his amended complaint. The pleadings determine which facts are relevant and frame the issues for summary judgment proceedings or for trial. See, e.g., *Doublewal Corp.* v. *Toffolon*, 195 Conn. 384, 390–91, 488 A.2d 444 (1985); *Recall Total Information Management, Inc.* v. *Federal Ins. Co.*, 147 Conn. App. 450, 456, 83 A.3d 664, cert. granted, 311 Conn. 925, 86 A.3d 469 (2014). "The principle that a plaintiff may rely only [on] what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations [in] his complaint." (Internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 140, 7 A.3d 911 (2010). "A complaint must fairly put the defendant

on notice of the claims . . . against him. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . Only those issues raised by the [plaintiff] in the latest complaint can be tried before the jury." (Internal quotation marks omitted.) *Gilbert* v. *Middlesex Hospital*, 58 Conn. App. 731, 734, 755 A.2d 903 (2000), quoting *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 557–58, 525 A.2d 954 (1987).[5]

A product liability claim under the malfunction theory is distinct from an ordinary product liability claim. The distinction lies in whether the plaintiff is relying on direct evidence of a specific defect (an ordinary claim) or circumstantial evidence of an unspecified defect (a malfunction theory claim). To establish a product liability claim, "a plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." (Internal quotation marks omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 131. Ordinarily, a plaintiff relies on direct proof of a specific manufacturing or design defect to prove his product liability claim, that is, evidence directly demonstrating that some part of a product was either defectively manufactured or designed and that the defectively designed or manufactured part caused the product to fail. See id. In some cases, however, a product malfunction causes the loss or destruction of the product, leaving the parties without direct evidence of the product's condition. Id., 131–32. This can leave the plaintiff without direct evidence to establish his claim. Id., 132. The malfunction theory allows a plaintiff to establish the existence of a defect at the time of sale or distribution through circumstantial evidence supporting an inference that an unspecified defect most likely caused the accident by virtue of the fact that other possible causes of the accident are absent. See id., 133–34. The plaintiff in the present case, however, did not reference the malfunction theory in his pleadings, nor did he present any allegations relative to its elements. Instead, he pleaded only a specific defect theory based on his assertion that a defect in the vehicle's fuel system caused the incident that resulted in his injuries.

To properly plead a product liability claim under the malfunction theory, the plaintiff was required to at least claim in the pleadings that some unspecified defect caused the plaintiff's harm and to allege facts tending to establish the malfunction theory's two basic elements, namely, "that (1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect

most likely existed at the time the product left the manufacturer's or seller's control and was not the result of the reasonably possible causes not attributable to the manufacturer or seller." Id., 139–40.

The plaintiff had ample notice that he needed to at least plead and prove these two basic elements to establish a malfunction theory claim. Although *this* court had not explored the contours of the malfunction theory before the plaintiff filed his amended complaint,[6] decisions of the Appellate and Superior Courts already had identified and discussed these elements. For example, as early as 1979, the Appellate Session of the Superior Court had explained that a plaintiff could establish the existence of a product defect at the time of sale, even in the absence of direct evidence, with "circumstantial evidence" of "some unspecified dangerous condition" and evidence eliminating other possible causes of the accident. *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, 35 Conn. Supp. 687, 691, 406 A.2d 1254, cert. denied, 177 Conn. 754, 399 A.2d 526 (1979). Subsequently, in *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, 3 Conn. App. 661, 491 A.2d 433 (1985), the Appellate Court agreed, explaining: "It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition. In the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect under § 402A of the [Restatement (Second)] of Torts." Id., 664. A Superior Court decision issued just two years before the plaintiff filed his amended complaint in the present case set forth the basic requirements of the malfunction theory in some detail, even quoting from the Restatement (Third) of Torts to explain the two essential elements of a claim: "[I]t may be inferred that the harm . . . was caused by a product defect . . . without proof of a specific defect, when the incident . . . (a) *was of a kind that ordinarily occurs as a result of* [*a*] *product defect*; and (b) *was not, in the particular case, solely the result of causes other than* [*a*] *product defect existing at the time of sale or distribution*." (Emphasis added; internal quotation marks omitted.) *Fallon* v. *Matworks*, 50 Conn. Supp. 207, 215, 918 A.2d 1067 (2007), quoting Restatement (Third), Torts, Product Liability § 3, p. 111 (1998).

Despite decades of judicial guidance, the plaintiff did not address the basic elements of a malfunction theory claim in his pleadings before the trial court. As a result, nothing in the plaintiff's complaint provided the defendants with notice that they needed to gather facts during discovery to defend against this theory of liability. See, e.g., *Montanaro* v. *Gorelick*, 73 Conn. App. 319, 324, 807 A.2d 1083 (2002) ("[t]he pleadings [must] provide sufficient notice of the facts claimed and the issues to be tried [so as to avoid] surprise or prejudice [to] the opposing party" [internal quotation marks omitted]). The plaintiff does not argue in his brief to this court

that he raised the claim in his amended complaint. Nor did the plaintiff seek leave to further amend his complaint to include this theory. Perhaps, if given notice, the defendants could have identified facts during discovery to establish other possible causes of the accident. If the plaintiff did not produce evidence to negate these other possible causes, the plaintiff's case would fail at the summary judgment stage. The plaintiff's failure to plead a malfunction theory claim in his complaint deprived the defendants of an opportunity to discover facts related to the claim, and it deprives the court of having those additional facts to aid in its decision. Having failed to provide notice to the trial court and the defendants of this alternative theory in his amended complaint by pleading the necessary facts, the plaintiff did not raise it "timely and distinctly . . . ." *Swerdloff* v. *AEG Design/Build, Inc.*, supra, 209 Conn. 189.

To be sure, the plaintiff was not required to plead a separate malfunction theory count in his complaint, but this does not relieve him of his burden of pleading facts to raise this theory in his complaint as part of his product liability claims. The malfunction theory is not an independent tort but an evidentiary principle that alters the plaintiff's ordinary burden of proof in a product liability action. See *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 134. It does so in two ways: (1) lowering the burden by removing the requirement that a plaintiff present direct evidence of a defect; and (2) raising it by requiring that a plaintiff negate other possible causes of the accident. See id., 133–34. A plaintiff must allege facts to put the trial court and the defendant on notice that the plaintiff intends to pursue his claim under this alternative burden of proof.

Our res ipsa loquitur jurisprudence is instructive. Even though res ipsa loquitur is not an independent cause of action, a plaintiff must—because Connecticut is a fact pleading jurisdiction—allege facts in his complaint to raise a res ipsa loquitur theory of negligence, especially when the plaintiff also asserts a negligence claim through allegations of specific acts of negligence. The Appellate Court addressed this issue in *Gilbert* v. *Middlesex Hospital*, supra, 58 Conn. App. 731. In that case, the plaintiff's amended complaint included allegations of specific acts of negligence but did not contain allegations that would establish the elements of res ipsa loquitur. Id., 733–34. The Appellate Court explained that "[a] res ipsa loquitur instruction is not appropriate [when] the plaintiff is not relying solely on circumstantial evidence, but instead alleges and introduces into evidence specific acts of negligence by the defendant." (Internal quotation marks omitted.) Id., 734–35. "*Because the amended complaint contained no allegations concerning res ipsa loquitur*, and because the plaintiff offered direct evidence of the defendants' negligence at trial, an instruction on res ipsa loquitur was not warranted." (Emphasis added.) Id., 735.

This commonsense principle is reflected in numerous decisions of the Superior Court. For instance, in *Benoit* v. *Athanasiadis*, Superior Court, judicial district of New London, Docket No. CV-12-6013227 (November 16, 2012) (55 Conn. L. Rptr. 22), the court explained: "Res ipsa loquitur certainly is not an independent cause of action but only a doctrine of evidence and thus not separate from a negligence claim. But certainly a claim of negligence can be based on a statement of facts and circumstances giving rise to the application of res ipsa loquitur. *In fact if a plaintiff is relying on a negligence claim framed in this way, because we are a fact pleading state, the plaintiff must set forth factual allegations raising this doctrine.*" (Emphasis added; internal quotation marks omitted.) Id. Other decisions state the same principle. See, e.g., *Hargrove* v. *Price Chopper*, Superior Court, judicial district of Hartford, Docket No. CV-12-6028482-S (October 4, 2013) (56 Conn. L. Rptr. 895, 896); *Smith* v. *Waterbury Hospital*, Superior Court, judicial district of Waterbury, Docket No. CV-01-0168363 (March 7, 2003) (34 Conn. L. Rptr. 262). Indeed, the Superior Court has rendered judgment against a plaintiff who failed to plead facts raising a res ipsa loquitur claim, even though the plaintiff attempted to raise that theory for the first time in opposition to a motion for summary judgment. See *Santiago* v. *Hospital of St. Raphael's*, Superior Court, judicial district of New Haven, Docket No. CV-05-4010822-S (July 25, 2008) (rendering judgment against plaintiff when "the plaintiff failed to plead res ipsa loquitur in his revised complaint, making it an improper issue for [the] court to consider").[7]

The reason for this is obvious. If a plaintiff pleads only a specific negligence claim, and does not also plead res ipsa loquitur, the defendant has no reason to believe that the plaintiff's claim is anything other than a garden variety specific negligence claim. So too it is with product liability claims based on the malfunction theory. That explains why, in the present case, the defendants and the trial court addressed only a claim based on a specific defect. Neither the defendants nor the court had any reason to believe that the plaintiff also was raising a malfunction theory claim. He did not plead it in his complaint.

If the plaintiff sought to establish his claim using the malfunction theory, our rules of practice required him either to raise it in his complaint or to obtain consent or leave to raise it in a further amended complaint. See, e.g., Practice Book § 10-60 (a). The plaintiff did neither. The plaintiff having failed to allege facts in his amended complaint establishing a claim based on the malfunction theory, the plaintiff's amended complaint did not comply with our pleading requirements.

C

Although the plaintiff did not plead the malfunction theory in his complaint, the plaintiff maintains that he properly raised it during the summary judgment proceedings in the trial court. We disagree that the plaintiff could properly raise a new, alternative theory of liability for the first time in opposition to a motion for summary judgment. In any event, a review of the summary judgment proceedings in the trial court demonstrates that the plaintiff did not raise a malfunction theory claim during those proceedings.

1

The plaintiff first asserts that he raised the malfunction theory in his memorandum in opposition to the defendants' motion for summary judgment. We reject this assertion for two reasons.

First, the plaintiff could not properly raise an entirely new, alternative theory of liability for the first time in his opposition to the defendants' summary judgment motion when he failed to plead this theory in his complaint or put the defendants on notice that he intended to rely on it by further amending his complaint. See, e.g., *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 607, 894 A.2d 335 (2006) (explaining that reviewing court need not address claim raised "for the first time in a pleading filed in opposition to the defendant's motion for summary judgment"), aff'd, 284 Conn. 193, 931 A.2d 916 (2007); *Moeller* v. *St. Luke's Foundation, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. X-08-CV-040199334-S (June 27, 2007) ("[a] court is not required to reach the merits of a claim or argument raised for the first time in a memorandum in opposition to summary judgment" when "that theory is not pleaded in the complaint"); *Bank of New York* v. *Conway*, 50 Conn. Supp. 189, 198 n.5, 916 A.2d 130 (2006) (same); see also *Santiago* v. *Hospital of St. Raphael's*, supra, Superior Court, Docket No. CV-05-4010822-S (rendering judgment against "the plaintiff [when he] failed to plead res ipsa loquitur in his revised complaint, making it an improper issue for [the] court to consider"). If the plaintiff intended to rely on the malfunction theory in opposition to summary judgment, he was required to plead that theory in his amended complaint or seek leave to further amend his complaint. Having failed to do this, he could not properly raise it for the first time in his opposition to the defendants' summary judgment motion.

Second, even if we suspend our pleading rules for the sake of argument, a review of the plaintiff's memorandum in opposition to the defendants' summary judgment motion reveals that he did not raise a claim of an unspecified defect under the malfunction theory and, again, did not even address its elements. The plaintiff asserts that he raised the malfunction theory when he argued that he could use circumstantial evidence to

prove that the alleged specific defect proximately caused his injuries. The plaintiff's proximate cause argument does not, however, establish or even relate to a malfunction theory claim. Proximate cause is a separate element of a product liability claim, distinct from the elements established by the malfunction theory. As we previously noted, the malfunction theory serves as proof of two elements of a product liability claim: the existence of a defect and that the defect existed when the product was sold or distributed. *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 134. Establishing proximate cause does not serve as proof of either of those elements. See id., 134–35 and n.6. Thus, in arguing that he could prove proximate cause with circumstantial evidence, the plaintiff did not also raise a claim of some unspecified defect under the malfunction theory, nor did the plaintiff present evidence to negate other possible causes. The plaintiff argued only that his own eyewitness testimony about the circumstances of how the incident in question occurred could support a finding that the alleged specific defect in his vehicle was the cause of his injuries. Accordingly, the plaintiff did not raise a malfunction theory claim in his memorandum in opposition to the defendants' summary judgment motion.[8]

2

The plaintiff next claims that he properly raised the malfunction theory during oral argument on the defendants' summary judgment motion, when plaintiff's counsel suggested that "an explosion in a car" was "evidence of a patent defect." We disagree.

Even if we assume that this passing suggestion actually referenced a malfunction theory claim, it was too little, too late, for several reasons. First, an issue must be "distinctly raised" before the trial court, not just "briefly suggested . . . ." *McKiernan* v. *Caldor, Inc.*, supra, 183 Conn. 166. This comment at oral argument in the trial court is hardly proper notice to the court and counsel of the significance of the change to the expressed theory of the plaintiff's case. To introduce a new, entirely separate alternative theory of liability into the case, the plaintiff must plead it in his amended complaint, not just mention it in passing in a few sentences at oral argument. Cf. *University of Connecticut* v. *Freedom of Information Commission*, 303 Conn. 724, 731, 36 A.3d 663 (2012) (noting "this court's policy not to consider arguments inadequately briefed and raised substantively for the first time at oral argument"). Second, the brief suggestion of the plaintiff's counsel is not enough to avoid summary judgment; rather, the plaintiff must come forward with real evidence, not mere assertions. See, e.g., *Fuchs* v. *Allstate Ins. Co.*, 96 Conn. App. 284, 289, 899 A.2d 709 (2006). Third, it would be unfair to the defendants to consider this claim when the defendants had no meaningful chance to discover

facts related to, and make a record to defend against, an entirely different theory of liability. Finally, we *cannot* consider this claim because the record is inadequate for our review. This court does not consider claims raised for the first time during an oral argument in the trial court when the trial court did not address the issue in its decision and the appellant failed to obtain an articulation from the trial court. See, e.g., *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52–53, 717 A.2d 77 (1998). The trial court in the present case did not address or rule on the plaintiff's alleged malfunction theory claim in its memorandum of decision. The trial court concluded only that the plaintiff was required to present expert testimony to prove his claim of a specific defect and to prove proximate cause. Neither of those conclusions relate to a claim of an unspecified defect under the malfunction theory, which the defendant did not raise. Tellingly, the plaintiff did not move for an articulation despite the absence of any mention of his supposed alternative theory by the trial court. One would expect that, if the plaintiff truly believed that he raised his malfunction theory claim in the trial court, he would have been surprised when the trial court ignored this theory in its memorandum of decision, which, in turn, would have prompted him to move for an articulation. His silence in this regard speaks volumes.[9]

3

Lastly, the plaintiff asserts that he raised this claim in his motion for reargument, which he filed *after* the trial court granted the defendants' motion for summary judgment. This argument fails for the same reasons that we discussed in part II C 2 of this opinion. The plaintiff failed to provide proper notice that he intended to use the malfunction theory by pleading it in his amended complaint. Raising an issue for the first time in a motion to reargue will not preserve that issue for appellate review. See, e.g., *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 94 n.28, 952 A.2d 1 (2008) ("[a] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple" [emphasis omitted; internal quotation marks omitted]). This is especially true when, as in the present case, the trial court denied the plaintiff's motion for reargument without comment, the plaintiff did not move for articulation of the reasons for the denial, and the plaintiff did not appeal from that decision. See *Billboards Divinity, LLC* v. *Commissioner of Transportation*, 133 Conn. App. 405, 410–11, 35 A.3d 395, cert. denied, 304 Conn. 916, 40 A.3d 783 (2012).

For the foregoing reasons, we conclude that the plaintiff did not properly raise a malfunction theory of liability in the trial court and, therefore, did not preserve it for appellate review. Accordingly, the Appellate Court properly declined to review the plaintiff's malfunction

theory claim on appeal.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, McDON-ALD and VERTEFEUILLE, Js., concurred.

[1] The plaintiff also named Central Ford-Mercury, Inc., as a defendant but subsequently withdrew the action with respect to that defendant. We hereinafter refer to Mazda and Cartwright Auto, LLC, collectively as the defendants.

[2] The plaintiff's automobile insurance company covered the loss of the vehicle, which was badly damaged as a result of the fire.

[3] The defendants also challenged the plaintiff's claim under the failure to warn theory of liability, but the trial court's conclusions as to that aspect of the summary judgment motion are not before us in this appeal.

[4] Although there are exceptions to this general rule; see, e.g., *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 144–61, 84 A.3d 840 (2014); none applies in the present case.

[5] In response, the dissent notes that consideration of a motion for summary judgment is not limited to the pleadings but extends to the record before the court. We agree that a court's ability to review the evidence, in order to determine whether a genuine issue of fact exists, is not limited to the pleadings. As our law makes clear, however, a plaintiff's theories of liability, and the issues to be tried, are "limited to the allegations [in the] complaint." (Internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction*, supra, 299 Conn. 140; see also *Doublewal Corp.* v. *Toffolon*, supra, 195 Conn. 390–91. The dissent's position that the plaintiff may rely on a theory of liability that he has not raised in his amended complaint but has raised for the first time in an opposition to a motion for summary judgment ignores our foundational pleading requirements. Allowing a plaintiff to rely on a theory that he has failed to raise in his complaint would silently abrogate our rules of pleading and, indeed, the very purpose of having pleadings in the first place. The dissent's position also circumvents our rules of practice governing the amendment of pleadings, which generally require a plaintiff to obtain the consent of the opposing party or leave of the trial court before introducing new facts and theories into a case through an amended pleading. See, e.g., Practice Book § 10-60 (a). A plaintiff cannot properly interject a new theory of liability into the case after the close of pleadings without amending or varying his complaint.

[6] We more fully examined the malfunction theory in *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 123, a decision released after the trial court's decision in the present case.

[7] The complaint in *Adkins* v. *Sodexho, Inc.*, Superior Court, judicial district of New Haven, Docket No. 480783 (April 6, 2004) (36 Conn. L. Rptr. 688, 690 nn.1 and 2), provides an example of how to plead both a specific negligence and a res ipsa loquitur theory within a single count of negligence. In that case, the trial court, in discussing the plaintiff's claims, reproduced in its memorandum of decision two paragraphs of the plaintiff's negligence count: one paragraph alleged a number of specific acts of negligence, and the other paragraph alleged a res ipsa loquitur claim. See id. The later paragraph alleged: "The [p]laintiff hereby pleads [r]es [i]psa [l]oquitur, not intending to be bound by the specific allegations of negligence set forth in [the preceding paragraph] . . . ." Id., 690 n.2. The plaintiff then went on to allege facts addressing each and every element of a res ipsa loquitur claim. See id. Similarly, if a plaintiff intends to rely on both a specific defect theory and an unspecified defect theory under the malfunction theory, it is possible and necessary to plead both theories within a single product liability count.

[8] The dissent tries to bootstrap its novel pleading theory by relying on the fact that the plaintiff cited two particular cases in support of his argument, namely, *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 219, 694 A.2d 1319 (1997), and *Lewis* v. *North American Philips Corp.*, Superior Court, judicial district of New Haven, Docket No. CV-91-0315792-S (April 6, 1994). The dissent, however, mistakenly overlooks the fact that the plaintiff did not cite either of these cases for the proposition that he could rely on the malfunction theory to prove the existence of a defect. Instead, he cited them only for the limited purpose of supporting his argument that he could use circumstantial evidence to prove proximate cause. In fact, the plaintiff's citation to these cases without mention of the malfunction theory further demonstrates that he did not intend to embrace that theory. Indeed, the plaintiff's own argument in his memorandum in opposition, to which the

dissent cites, demonstrates that the plaintiff intended to raise only a specific defect theory. In his memorandum in opposition, the plaintiff stated that he was "required to provide some form of evidence, including expert testimony, *to quantify the precise product defect.*" (Emphasis added.) Having argued that he was required to prove a "*precise* product defect"; (emphasis added); while citing to *Potter*, one cannot seriously interpret his citation to *Potter* as also raising a claim of an *unspecified* defect under the malfunction theory. We require the trial court and opposing parties to address only those arguments that a plaintiff actually raises, not every possible argument that a plaintiff could have made but did not.

[9] The dissent's repeated assertion that the plaintiff raised the malfunction theory by arguing that he did not need an expert to prove proximate cause is based on a misunderstanding of the malfunction theory. The malfunction theory is not an alternative to expert testimony, nor is it proven simply on the basis of the expectations of the consumer. The malfunction theory is an alternative to proving the existence of a specific defect that is based on the argument that a malfunction resulted from an unspecified defect in the product because there is no other reasonably possible cause of the malfunction. See *Metropolitan Property & Casualty Ins. Co.* v. *Deere & Co.*, supra, 302 Conn. 139–40. In fact, we have made clear that many claims under the malfunction theory will require expert testimony. Despite generously citing to our decision in *Metropolitan Property & Casualty Ins. Co.*, the dissent leaves out the portion of that decision in which we made clear that, "[i]f lay witnesses and common experience are not sufficient to remove the case from the realm of speculation, the plaintiff will need to present expert testimony to establish a prima facie case." Id., 141. We further noted that "[e]vidence of the most likely causes of [a] malfunction ordinarily will be presented through an expert witness." Id., 141 n.10. Thus, whether a plaintiff must present expert testimony is an issue independent of the issue of whether a plaintiff may rely on the malfunction theory. The plaintiff therefore did not raise a malfunction theory argument merely by asserting that he did not need to present expert testimony to prove proximate cause.

Furthermore, the dissent's assertion that the plaintiff could prove a design defect through the malfunction theory further demonstrates the dissent's misunderstanding of the malfunction theory. A design defect theory typically is based on a claim that a product harbored a *specific* problem due to its design, and such a claim is proven through a review of the plans of a product and its exemplars. The malfunction theory, however, does not involve a claim of a specific defect, whether the result of faulty design or manufacturing. In other words, the malfunction theory of product liability does not depend on a design or manufacturing defect. See, e.g., J. Hoffman, "Res Ipsa Loquitur and Indeterminate Product Defects: If They Speak for Themselves, What Are They Saying?," 36 S. Tex. L. Rev. 353, 382 (1995) ("[an] [i]ndeterminate defect [claim] is based [on] neither a claim of manufacturing or design defect . . . but is a mutually exclusive separate category of liability premised [on] the plaintiff's inability or unwillingness to specify the nature of the defect" [emphasis omitted]). If the plaintiff intends to prove a design defect, he must demonstrate a faulty design. He cannot rely on the malfunction theory to prove a design defect. To rely on a malfunction theory, in addition to a manufacturing or design defect theory, a plaintiff must separately plead that claim in the alternative.